UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | : | |
|---|---|---|
| LEON MCCALLA | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:17-CV-1044 (JCH) |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY | : | OCTOBER 26, 2017 |
| Defendant. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 12)**

**I.   INTRODUCTION**

The plaintiff, Leon McCalla, filed a Complaint against the defendant, Yale University.  See Complaint ("Compl.") (Doc. No. 1).  In it, McCalla brings seven claims against Yale, arising out of the alleged racial discrimination and harassment of McCalla's supervisor, Melissa Bonk.  See id.  On August 25, 2017, Yale filed a Motion to Dismiss Count Seven, which alleges intentional infliction of emotional distress.  See Motion to Dismiss ("Mot. to Dismiss") (Doc. No. 12).

For the reasons set forth below, the court grants Yale's Motion, and Count Seven is dismissed.

**II.   BACKGROUND**

The Complaint alleges the following facts.[1]  McCalla had been employed by Yale as a Lab Animal Technician Scheduler since 1989 and was the only African American in that position.  See Compl. at ¶¶ 13–14.  McCalla alleged that he performed satisfactorily in the position, which was recognized by Yale in the form of a yearly raise and several

---

[1] The court accepts all factual allegations in the Complaint as true for the purposes of a motion to dismiss.  Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

1

promotions. See id. at ¶¶ 15, 17. In May 2013, Melissa Bonk became McCalla's supervisor. See id. at ¶ 18. Bonk is Caucasian. See id.

McCalla alleges that he was "unfairly scrutinized, micromanaged, harassed, and discriminated against" by Bonk. Id. at ¶ 19. For example, Bonk gave McCalla both verbal and written warnings for errors with his performance, "even if the error was inconsequential" or if the error was not made by him. Id. at ¶¶ 20, 27. He cites specific instances on February 7, 2014, July 28, 2015, and December 24, 2015. See id. at ¶¶ 21, 23, 27. Bonk conducted "Fact-finding" meetings to discuss these errors, but did not provide McCalla or his union representative with copies of the alleged errors. See id. at ¶¶ 31–32. McCalla also alleges that Bonk "berated, belittled, and intentionally embarrassed him" in front of his co-workers because of his alleged mistakes. Id. at ¶ 27. He cites specific instances on December 24, 2017, and March 19, 2016. See id. at ¶¶ 27, 36. Although McCalla complained to the union, to Yale's Office for Equal Opportunity, and to Human Resources, Yale took no action to stop Bonk's conduct. See id. at ¶¶ 21–22, 24–26, 28–29, 33–34. After meeting with Bonk and a representative from Human Resources, McCalla was suspended for three days due to alleged poor work performance. See id. at ¶ 34.

McCalla also alleges that employees who were Caucasian were not disciplined for their scheduling errors or for arriving late while African-American employees were. See id. at ¶¶ 30, 36–39. On March 25, 2016, McCalla filed an initial complaint alleging hostile work environment and disparate treatment on the basis of race with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission. See id. at ¶ 41. After McCalla filed the

2

complaint, Bonk's harassment and hostility worsened until McCalla "could no longer tolerate Yale's hostile work environment and constructively discharged on August 16, 2016, as recommended by his doctor." Id. at ¶ 42. McCalla's doctor stated that he "had to leave work for medical reasons related to stress" caused by his work environment and specifically by Bonk. Id. at ¶ 43.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Proc. 8(a). Under Rule 12(b)(6), to survive a motion to dismiss for failure to state a claim, that plain statement must allege facts sufficient to state a plausible claim for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While this plausibility standard does not require probability, it is not satisfied by "a sheer possibility that a defendant has acted unlawfully" or by facts that are "merely consistent with a defendant's liability." Id. (internal quotation marks omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the court must accept all material factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Hemi Grp., LLC v. City of New York, 559 U.S. 1, 5 (2010); Jaghory v. N.Y. State Dep't Educ., 131 F.3d 326, 329 (2d Cir. 1997). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); Timm v. Faucher, No. 3:16-CV-00531 (VAB), 2017 WL 1230846, at *6 (D. Conn. Mar. 31, 2017). In those

instances, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  The court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice should be taken." Samuels v. Air Trans. Local 504, 992 F.2d 12, 15 (2d Cir. 1993); Borg v. Town of Westport, No. 3:15-CV-1380 (AWT), 2016, WL 9001021, at *3 (D. Conn. Aug. 18, 2016).

**IV.    DISCUSSION**

Count Seven of the Complaint alleges that Yale intentionally inflicted emotional distress on McCalla because it knew of Bonk's conduct and took no steps to prevent it. See Compl. at 98–104.  Yale moves under Rule 12(b)(6) to dismiss Count Seven for failure to state a claim upon which relief can be granted.  See Memorandum in Support of Motion to Dismiss Count Seven ("Mem. in Supp.") (Doc. No. 13) at 3.  It argues primarily that McCalla's Complaint fails to allege conduct that is sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress.  See id. at 4. Briefly, Yale also includes one sentence arguing that McCalla has not alleged facts to indicate that his emotional distress was severe.  See id. at 6.  The court agrees that the facts alleged by McCalla do not rise to the level of extreme and outrageous, and Count Seven is dismissed on this ground.  Therefore, the court need not address Yale's second argument as to whether McCalla's emotional injury is severe.

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's

4

conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Dipane-Saleem v. Gallagher, No. 3:15-CV-596 (MPS), 2016 WL 1060190, at *4 (D. Conn. Mar. 15, 2016) (quoting Appleton v. Bd. of Educ., 757 A.2d 1059, 1062 (2000)).  The focus of the court in this case is on the second element.  This second element is satisfied "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" Montague v. Sodexco, Inc., No. 3:15-CV-00972 (MPS), 2017 WL 4476969, at *22 (D. Conn. Oct. 6, 2017) (quoting Appleton, 757 A.2d at 1062).

This inquiry is not a bright-line rule, but requires the court to consider the specific facts and circumstances of each case. Lamothe v. Russell, No. CV07-4022729S, 2009 WL 1057965, at *2 (Conn. Super. Ct. Mar. 25, 2009).  However, courts do agree that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings" are insufficient. Miner v. Town of Cheshire, 126 F. Supp 2d 184, 195 (D. Conn. 2000).

Connecticut courts have held that the bar for extreme and outrageous is higher in the employment context. See, e.g., Nelson v. City of Bridgeport, No. CV065001428S, 2012 WL 4902812, at *15 (Conn. Super. Ct. Sept. 27, 2012).  This is because "individuals in the workplace reasonably should expect to experience some level of emotional distress, even significant emotional distress as a result of conduct in the workplace." Id. (quoting Perodeau v. Hartford, 792 A.2d 752, 769 (2002)).  Thus,

5

"routine employment action, even if made with improper motivations, does not constitute extreme or outrageous behavior." Williams, 2009 WL 3571365, at *3 (quoting Adams v. Hartford Courant, No. 3:03CV0477 (JCH), 2004 WL 1091728, at *4 (D. Conn. May 14, 2004)). However, persons in the workplace are not "to be subject to conduct that 'transgresses the bounds of socially intolerable behavior,' or that would involve 'an unreasonable risk of causing emotional distress . . . that . . . if it were caused, might result in bodily harm.'" Adams v. Yale New Haven Hosp., No. 306-CV-1166JCH, 2007 WL 201244, at *3 (D. Conn. Jan. 22, 2007) (internal citations omitted).

In this case, McCalla alleges conduct by Bonk that includes: (1) unfair disciplinary action, (2) berating, insulting, belittling, and embarrassing McCalla in front of his co-workers, and (3) discriminating against McCalla on the basis of race by treating him differently than white employees who make similar types of errors.[2] For example, McCalla alleges that Bonk issued verbal and written warnings for alleged errors even if they were inconsequential or wrongly attributed to him. See Compl. at ¶¶ 20, 21, 23. Additionally, he was suspended for three days for alleged poor work performance after he complained to Human Resources about Bonk's conduct. See id. at ¶ 35. McCalla also alleges two dates on which he was "berated, belittled, and intentionally embarrassed" by Bonk, at least the first of which occurred in front of his co-workers.

---

[2] McCalla also points in his Memorandum to the fact that "Plaintiff was forced to resign, as he was no longer able to tolerate Bonk's disparate treatment, which was recommended by his doctor." Mem. in Opp. at 7. However, because "extreme and outrageous" is an objective standard, the court considers whether the conduct would cause an "average member of the community . . . to exclaim, Outrageous!" rather than McCalla's subjective experience of the conduct. Montague, 2017 WL 4476969, at *22; see also Marshall v. Marshall, No. 08-CV-1420 (KAM) (LB), 2010 WL 5477753, at *10 (E.D.N.Y. Dec. 7, 2010); McCurdy v. Jones, No. CV-085009093S, 2011 WL 3930206, at *4 n.2 (Conn. Super. Ct. Aug. 9, 2011). Therefore, McCalla's allegations of constructive discharge are more appropriately considered in the inquiry of whether the emotional distress was severe, rather than the inquiry before the court as to whether the defendant's conduct was extreme and outrageous.

6

See id. at ¶¶ 27, 36. Finally, McCalla alleges that he and other African-American employees were disciplined for errors, such as scheduling mistakes and arriving late, but Caucasian employees were not. See id. at ¶¶ 30, 36–39.

While Bonk's warnings and other disciplinary actions may have been unfair or unwarranted, her conduct constitutes "routine employment action," which does not rise to the level of extreme or outrageous behavior. Williams, 2009 WL 3571365, at *3. The court in Williams held that "unfair discipline, negative performance reviews, and failures of promotion . . . do not make out a claim for intentional infliction of emotional distress." Id. Other courts facing similar, if not more egregious, allegations of unfair discipline than that alleged by McCalla also found such claims insufficient to satisfy the requirement of extreme or outrageous conduct. See, e.g., Mercado v. Prrc, Inc., No. 3:15CV637 (JBA), 2015 WL 6958012, at *4–5 (D. Conn. Nov. 10, 2015) (dismissing as insufficiently extreme or outrageous a claim in which the plaintiff alleged, inter alia, that the defendant "abused his managerial position to continually harass and discipline the plaintiff for pretextual employment issues due to race and national origin discrimination"); Melendez v. City of New Haven, No. 3:13-CV-860 RNC, 2013 WL 6859941, at *4 (D. Conn. Dec. 30, 2013) (similarly dismissing a claim in which the plaintiff alleged, inter alia, that he was "yelled at, disciplined, and demoted, . . . and that these actions were racially motivated"); Taylor v. Maxxim Med., Inc., No. 3:99CV338 (AHN), 2000 WL 630918, at *3 (D. Conn. Mar. 23, 2000) (similarly dismissing a claim in which the plaintiff alleged that the defendants "falsely accused him of disclosing trade secrets, took improper disciplinary action against him, blamed, harassed and embarrassed him for the mistakes of others, ridiculed him, rejected his work and placed

7

him on probation while he was on medical leave"). Thus, McCalla's allegations that Bonk issued unfair verbal and written warnings against him and that Yale wrongfully suspended him do not plead facts sufficient to plausibly allege extreme and outrageous conduct.

Nor do his allegations that Bonk verbally berated him in front of his co-workers. As noted above, courts have not recognized "insults, verbal taunts, threats, indignities, annoyances, petty oppressions, or conduct that displays bad manners or results in hurt feelings" as extreme and outrageous. Williams, 2009 WL 3571365, at *3. As Yale indicates in its Memorandum, the cases that McCalla cites as a basis that insulting, demeaning, and shouting are extreme and outrageous can be distinguished from his case because those plaintiffs also alleged physical threats or contact. See Mem. in Supp. at 4–6; Memorandum in Opposition to Defendant's Motion to Dismiss ("Mem. in Opp.") (Doc. No. 19) at 6; Cole v. Terrell Moorehouse, No. CV990427337S, 2002 WL 31304178, at *3 (Conn. Super. Ct. Sept. 18, 2002) ("There is no question that the verbal interactions described by the plaintiff fall far short of the requirement for conduct which is extreme and outrageous. If the criticisms, and even the alleged shouting, were the totality of the behavior that the plaintiff claims to be actionable, this court would grant the defendant's motion, without hesitation. However, the plaintiff alleges, physical threats, and physical contact, too."); Lamothe, 2009 WL 1057965, at *5 (alleging, in addition to screaming and yelling, that the defendant threw objects at the plaintiff and grabbed a cigarette out of the plaintiff's mouth or hands). In contrast, McCalla's allegations of verbal harassment alone are insufficient. See, e.g., Mercado, 2015 WL 6958012, at *4 (dismissing as not extreme or outrageous a claim that alleged, inter alia,

8

that the defendant "engaged in a 'repeated pattern of verbal abuse regarding the Plaintiff's race and national origin'").

In his Memorandum, McCalla argues that Bonk's verbal berating and ridiculing was extreme and outrageous because it occurred in front of his co-workers. See Mem. in Opp. at 5-7. To support this, he cites Knight v. Southeastern Council on Alcoholism and Drug Dependency, which states, "Plaintiffs have, however, been successful in establishing claims for intentional infliction of emotional distress where they have alleged that they were forced to suffer public ridicule . . . ." Knight v. Southeastern Council on Alcoholism and Drug Dependency, No. 557182, 2001 WL 1231825, at *4 (Conn. Super. Ct. Sept. 24, 2001). At least one court in this District has expressly considered and rejected McCalla's argument, however. See Mercado, 2015 WL 6958012, at *4 n.3. That court found that Knight relied on a "single case which does not provide support for that statement" because the case "in fact rejects all of the plaintiff's claims which rested on public ridicule, finding that the only plausible claim for IIED in the plaintiff's complaint was the allegation that the plaintiff's supervisor had thrown a piece of meat at him while he was working at the cutting table with a knife." Id. "Thus, while an allegation of public ridicule may, in some instances, support a claim of IIED, it does not, ipso facto, transform a non-plausible claim into a plausible claim." Id. Therefore, Mercado held that the plaintiff had not stated a claim for intentional infliction of emotional distress, even though the plaintiff had alleged that the defendant "public[ly] ridicule[d] him in front of other employees." Id. at *4 (internal quotation marks omitted).

Other courts have similarly dismissed claims including allegations that the defendants belittled or harassed the plaintiffs in front of others. See Tomby v. Cmty.

9

Renewal Team, Inc., No. 3:09-CV-1596 (CFD), 2010 WL 5174404, at *8 (D. Conn. Dec. 15, 2010) (finding that the defendant's conduct, which included "belittling [the plaintiff] in front of clients," was not extreme or outrageous); Appleton, 757 A.2d at 1063 (also finding to be not extreme or outrageous the fact that, inter alia, the defendant "made condescending comments to [the plaintiff] in front of [her] fellow colleagues questioning [her] vision and ability to read"). Thus, the presence of McCalla's co-workers when Bonk "berated, belittled, and intentionally embarrassed" him on December 24, 2015, does not itself make the conduct extreme or outrageous.

Additionally, McCalla argues that Bonk's role as his supervisor should make the court "more inclined to consider the conduct extreme and outrageous." Mem. in Opp. at 7. He cites Lamothe, which states that "courts have found the authoritative position of the defendant to be an important consideration in determining whether conduct is extreme and outrageous." Lamothe v. Russell, No. CV07-4022729S, 2009 WL 1057965, at *4 (Conn. Super. Ct. Mar. 25, 2009). The court agrees that Bonk's supervisory role is an "important consideration," but it is only one factor and does not alone make the conduct extreme or outrageous. In Lamothe, the plaintiff's supervisor not only verbally berated the plaintiff, but also threw objects at her and grabbed a cigarette from her mouth or hands while screaming at her. Id. at *5. Facts of similar severity are not alleged in McCalla's Complaint. Further, many of the cases cited previously by the court, in which the claims were dismissed for not alleging extreme and outrageous conduct, in fact involved conduct of supervisors and employers. See, e.g., Mercado, 2015 WL 6958012, at *3–4 (listing nine cases in which courts rejected claims of intentional infliction of emotional distress, all of which alleged conduct by a supervisor

10

or employer); Appleton, 757 A.2d at 1062–63 (dismissing the claim of a teacher alleging conduct by her supervisors, the principal and assistant principal). Therefore, the mere fact that Bonk is McCalla's supervisor is not inconsistent with the court's conclusion that her alleged conduct is not sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress.

Finally, intentional discrimination on the basis of race is not necessarily extreme or outrageous. See Sangan v. Yale Univ., No. 3:06CV587 (PCD), 2006 WL 2682240, at *5 (D. Conn. Sept. 15, 2006). "In the context of the employer-employee relationship, the court must assess whether the employer's conduct, not the employer's motive, was extreme or outrageous. Thus, the claims of employer misconduct in the form of intentional discrimination or retaliation, including discharge, which challenge motive or intent, are dismissed unless the manifesting conduct is itself outrageous or extreme." Credle-Brown v. Connecticut, 502 F. Supp. 2d 292, 300 (D. Conn.), adhered to on reconsideration, 246 F.R.D. 408 (D. Conn. 2007) (internal citations omitted). Courts have therefore dismissed as insufficiently extreme and outrageous cases alleging discrimination on the basis of race or gender. See, e.g., Adams v. Yale New Haven Hosp., 2007 WL 201244, at *4; Mercado, 2015 WL 6958012, at *4; Tomby, 2010 WL 5174404, at *8; Lorenzi v. Conn. Judicial Branch, 620 F. Supp. 2d 348, 353 (D. Conn. 2009).

While Lamothe cites cases in which discriminatory conduct of a supervisor was considered extreme and outrageous, these cases involved racial slurs or other discriminatory comments made to plaintiffs. See Lamothe, 2009 WL 1057965, at *3; see also, e.g., Leone v. New England Comm'ns, 32 Conn. L. Rptr. 72, at *3 (Conn.

Super. Ct. Apr. 10, 2002). In McCalla's case, he alleges that disciplinary actions were taken against him because of his race, but he does not allege that any racially derogatory comments were made toward him or that Bonk directly expressed any racial motive. Therefore, if, as concluded above, the underlying conduct is not sufficiently extreme or outrageous, the claim must be dismissed, regardless of any racially based motive of the supervisor.

In sum, the conduct alleged in the Complaint is not sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress. Connecticut courts and courts in this District have dismissed claims with similar, if not more egregious, allegations of unfair discipline, verbal ridicule, and discrimination. See, e.g., Mercado, 2015 WL 6958012, at *4; Appleton, 757 A.2d at 1063. Accordingly, Count Seven of the Complaint is dismissed.

## V. CONCLUSION

For the above stated reasons, the Motion to Dismiss (Doc. No. 12) is **GRANTED**, and Count Seven is dismissed.

**SO ORDERED**.

Dated at New Haven, Connecticut this 26th day of October, 2017.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge